## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **TEMPLE BAPTIST CHURCH;** **PASTOR ARTHUR SCOTT**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **CITY OF GREENVILLE; MAYOR ERRICK D. SIMMONS**, in his official capacity, <br><br> *Defendant*. | Case No.: 4:20cv64-DMB-JMV |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

1.      Two days ago, the City of Greenville sent eight uniformed police officers to bust up Plaintiffs' midweek, lightly attended, "drive-in" church service. Although the Governor's Executive Orders expressly allow churches to remain open and hold services of this sort, the City thought that Plaintiffs' "drive-in" church service—where everyone stays inside their cars with windows up while listening to music and a sermon broadcasted over FM radio—posed a unique and unacceptable threat to public health and safety.

2.      The City Mayor and City Council adopted an order on April 7, titled "EXECUTIVE ORDER REGARDING CHURCH SERVICES." The City's order mandates the closure of all church buildings not just for in-person services but also for "drive-in" services where there no in-person contact. *See* Executive Order Regarding Church Services, attached as **Exhibit 1**.

3.      Plaintiffs were the first to feel the unjust effects of this unlawful order. A day after issuing its church-closure order, the City disrupted Temple Baptist

Church's Wednesday evening "drive-in" service, issued citations, and imposed $500 fines on those in attendance, including Pastor Arthur Scott.

4.    The scene was both shocking and humiliating. Plaintiffs are good citizens and valuable members of the Greenville community. Temple Baptist Church has been serving the Greenville community for almost 65 years, and Pastor Scott has been leading the Church for over 45 years.

5.    Moreover, Plaintiffs have done everything they can to protect the health and safety of their parishioners and community from COVID-19. Indeed, Plaintiffs voluntarily closed their doors to in-person worship services and decided to start holding "drive-in" services several weeks ago to avoid unnecessary person-person contact. And the Church does not allow those attending its "drive-in" services to leave their cars for any reason, going so far as to lock the Church's doors and posting "STAY IN CAR" on the Church's main sign.

6.    Easter Sunday is in less than two days. Without a temporary restraining order and injunction, Plaintiffs will face fines and penalties for assembling and worshiping God on Easter—the most important holiday in the Christian Church. As they have done for the past three weeks, Plaintiffs plan to hold their Easter service as a "drive-in" service so that parishioners can safely worship God together from their cars without risking the spread of COVID-19. Despite these safety measures, which exceed what is required under state law, the City continues to threaten Plaintiffs with fines and penalties. A temporary restraining order and injunction are therefore needed to preserve Plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

7.    This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983.

8.     This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

9.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

10.    This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief and damages under 28 U.S.C. § 1343, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

11.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant resides in this district.

## PARTIES

12.    Plaintiff Temple Baptist Church is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Temple Baptist Church is located in Greenville, Mississippi.

13.    Plaintiff Arthur Scott serves as Pastor of Temple Baptist Church. He is 82 years old and has served as the Church's pastor for over 45 years.

14.    Defendant City of Greenville is a municipality organized under the laws of the State of Mississippi and is subject to suit under 42 U.S.C. § 1983 and common law.

15.    Defendant Errick D. Simmons is Mayor of the City of Greenville. He is sued in his official capacity only.

16.    Defendants City of Greenville and Mayor Simmons are collectively referred to as the City.

## FACTS

### Temple Baptist Church

17.    Founded in 1955, Temple Baptist Church is a small church that has served the Greenville community for almost 65 years.

18.    The Church is an independent church, not closely affiliated with any association, convention, conference, or council of churches.

19.    Plaintiffs, the Church and Pastor Scott, believe that the Bible is the inspired Word of God and the sole authority for faith and practice.

20.    They believe the Bible teaches, among other things, the requirement to gather together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

### "Drive-in" Services: The Church's Proactive Response to COVID-19

21.    About three weeks ago, in response to the spread of COVID-19, Plaintiffs voluntarily decided to start holding "drive-in" worship services on Sundays and Wednesdays instead of holding traditional in-person services.

22.    Although no state or local governmental order prohibited in-person church services, the Church proactively decided that "drive-in" services would rightly protect the health and safety of its parishioners and community given the spread of COVID-19, while still allowing for corporate prayer and worship.

23.    Notably, many Church members do not have social media accounts, the ability to participate in a Zoom call, or watch services online, a concern addressed by holding "drive-in" services. The Church also does not have a website.

24.    The Church's "drive-in" services involve no in-person contact. Attendees park their cars in the Church's parking lot, spaced beyond CDC guidelines, while listening to the service—which consists of worship music and a sermon—over FM radio.

4

25.   The Church prepares for and performs its services inside the church building, which is empty, and broadcasts the services to the cars outside through a low power FM radio transmitter.

26.   The Church purchased necessary electronics and equipment, including the FM radio transmitter, specifically for the purpose of broadcasting "drive-in" services.

27.   To ensure everyone's health and safety, the Church requires all attendees to stay inside their cars before, during, and after the service.

28.   In fact, the Church's main sign prominently instructs attendees to stay in their cars:



29.   Plaintiffs also take additional precautions for health and safety purposes.

30.     The Church limits its production team to less than ten people, with six to eight people usually working each service.

31.     In addition, the production team arrives at the Church before each service begins and locks the building's doors.

32.     Plaintiffs do not allow attendees to access the Church building for any reason, including even to use the Church's bathrooms.

33.     The Church's production team is also careful to follow CDC and Mississippi Department of Health guidelines while preparing for and producing the Church's "drive-in" services. Among other things, they stay at least six feet from each other.

34.     In sum, the Church's "drive-in" services are a creative way for the Church and its parishioners to worship together and exercise their faith while avoiding in-person contact and ensuring the health and safety of attendees and the local community.

**The Governor's Orders allow churches to hold "drive-in" services**

35.     On March 24, Mississippi Governor Tate Reeves issued Executive Order 1463, generally ordering Mississippi residents to "avoid social and other non-essential gatherings in groups of more than 10 people." But that requirement did not apply to "any Essential Business or Operation," a term that expressly includes "[r]eligious entities including religious and faith-based facilities, entities and groups, religious gatherings provided that they adhere to the CDC and the Mississippi Department of Health recommendations and guidance to prevent the spread of COVID-19." Executive Order 1463 (Mar. 24, 2020), attached as **Exhibit 2**.

36.     Two days later, Governor Reeves signed a Supplement to Executive Order 1463. The Supplement explained that its intent and purpose was "to provide

clarity and to avoid and prevent inconsistencies" with similar orders issued by local governments. *See* Supplement to Executive Order 1463 (Mar. 26, 2020), attached as **Exhibit 3**.

37.     The Supplement clarified that local governmental "orders, rules, regulations, resolutions, and actions" issued in response to COVID-19 are enforceable *only* if they: (1) "provide the minimum applicable restrictions set out in Executive Order No. 1463," and (2) "do not impose restrictions that prevent any Essential Business or Operation as identified in Executive Order No. 1463 from operating at such level necessary to provide essential services and functions during this COVID-19 State of Emergency."

38.     Governor Reeves further clarified at a press conference that a municipality such as the City of Greenville may use their local emergency power in response to COVID-19 so long as it "does not directly conflict with allowing for what the state order says." *See* **Exhibit 4**.

39.     A few days later, on April 1, Governor Reeves issued Executive Order 1466, requiring Mississippi residents to "shelter in place" and mandating closure of all non-essential businesses and operations until April 20. *See* Executive Order 1466 (Apr. 1, 2020), attached as **Exhibit 5**.

40.     But under Executive Order 1466, Essential Businesses and Operations such as "religious and faith-based facilities, entities and groups, religious gatherings" can remain open and "operate at such level as necessary to provide essential services and functions."

41.     Furthermore, Executive Order 1466 allows individuals to leave their homes to "carry out activities permitted in this Executive Order."

42.     For houses of worship, the end effect of the Governor's Executive Orders is that they can continue holding religious gatherings like "drive-in" services.

7

43.     Indeed, although Governor Reeves has asked houses of worship to refrain from in-person gatherings—which Plaintiffs have done and have been doing voluntarily—he has stated that "[t]he government does not have the right to shut down places of worship." *See* **Exhibit 6**.

**The City violates the Governor's Orders and specifically targets churches**

44.     Despite the Governor's Orders, the City of Greenville issued a conflicting order on April 7, titled "EXECUTIVE ORDER REGARDING CHURCH SERVICES," mandating that all church buildings close for in-person and drive-in services until the Governor's "shelter in place" order expires. *See* Exhibit 1.

45.     In so doing, the City unilaterally and unlawfully reclassified churches as "*non*-essential" businesses and operations—a designation reflected in a chart posted on the City's website.[1]

| NONESSENTIAL BUSINESSES | ESSENTIAL BUSINESSES: |
|---|---|
| • Dance Halls<br>• Bars<br>• Taverns<br>• Movie Theaters<br>• Restaurant Dining Areas<br>• Churches<br>• Funerals<br>• Gyms<br>• Outdoor Recreations Facilities<br>• Tattoo Parlors<br>• Museums<br>• Salons, Barber Shops, and other grooming facilities<br>• All non essential retail stores and businesses are closed. | • Grocery Stores<br>• Pharmacies<br>• Convenient Stores<br>• Gas Stations<br>• Laundry Mats<br>• Discount/Dollar Stores<br>• Hospitals/Medical Clinics<br>• ALL businesses and industries deemed essential by state and federal orders. |

46.     Although the City issued its church-closure order without any notice or advance warning, it made the order effective immediately.

---

[1] City of Greenville, Mayor and Greenville City Council Issue Orders on Church Services & City Curfew Effective Immediately, https://bit.ly/34nDaJA (webpage attached as **Exhibit 7**).

47. Before the City issued its order, Plaintiffs had told the City that it was serving and ministering to its parishioners and community through "drive-in" services.

48. Under the City's church-closure order, churches may broadcast their services through social media, streaming, and telephonic platforms, but may not hold a "drive-in" service like those held by Plaintiffs, where the service is broadcast over low power FM radio.

49. The City's church-closure order asserts that shutting down "drive-in" services is necessary "to prevent the spread of COVID-19 linked to church gatherings."

50. But the City's order does not identify any specific instance where a "drive-in" service resulted in the spread of COVID-19.

51. In fact, according to the City, you can buy a hamburger or sit in your car at a drive-in restaurant with your windows rolled *down*, but you can't sit in your car at a drive-in church service with your windows rolled *up*.

**The City decides to make an example of Temple Baptist Church**

52. On April 8, 2020, the very next day after the City issued its church-closure order, City police officers traveled to Temple Baptist Church for the purpose of interrupting the Church's Wednesday evening "drive-in" service.

53. Even though the Church's midweek service was lightly attended, with less than twenty cars in the parking lot, the City sent eight uniformed police officers to disrupt the Church's religious service and to issue citations.

54. When the police arrived, those attending the service were sitting peacefully inside their cars listening to Pastor Scott's sermon, with their windows rolled up.

55.    As was the case at the Church's earlier "drive-in" services, no one was outside his or her car at any point during the service, including when the City police arrived.

56.    Instead of waiting for the service to end and informing attendees about the City's recent church-closure order—which was enacted just one day before—City police began knocking on car windows, demanding driver's licenses, and writing citations with $500 fines.

57.    Most of the attendees, including Pastor Scott and members of his family, received citations.

58.    Many who were cited and who attend the Church's "drive-in" services do not have the financial resources to pay a $500 fine, especially in light of the sudden economic downturn and uncertainty caused by COVID-19.

59.    The day after the City busted up the Church's drive-in service, the Mayor held a call with faith leaders where he explained the City's reason for the order and asserted there was a need to send a "message" to the community.

60.    Plaintiffs want to continue holding "drive-in" services, including this upcoming Easter Sunday, until it is once again safe to meet in-person.

61.    The City was acting under color of state law when it enacted and enforced the church-closure order and it continues to act under color of state law.

62.    In the absence of declaratory and injunctive relief, Church members and attendees will be deterred from attending future "drive-in" services and Plaintiffs will continue to suffer violations of their constitutional rights and irreparable harm.

## COUNT I
### Violation of the First Amendment to the U.S. Constitution
### (Free Exercise)

63.    Plaintiffs incorporate by reference paragraphs 1 through 62.

64.     Plaintiffs sincerely held religious beliefs teach that Bible is the inspired Word of God and the sole authority for faith and practice.

65.     Plaintiffs sincerely believe that the Bible teaches the necessity of gathering together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

66.     The City's church-closure order substantially burdens Plaintiffs' religion by prohibiting them from holding even "drive-in" church services.

67.     The City's church-closure order interferes with Plaintiffs' ability to carry out their religious doctrine, faith, and mission.

68.     The City's church-closure order targets, discriminates against, and shows hostility towards churches, including Plaintiffs.

69.     The City's church-closure order is neither neutral nor generally applicable.

70.     The City does not have a compelling reason for shutting down "drive-in" church services, nor has it selected the least restrictive means to further any purported interest.

71.     The City's church-closure order violates the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

72.     In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT II
### Violation of the First Amendment to the U.S. Constitution
### (Free Speech)

73.     Plaintiffs incorporate by reference paragraphs 1 through 72.

74.     The City's church-closure order violates Plaintiffs' freedom of speech by prohibiting them from engaging in religious speech through their "drive-in" church services, which occur exclusively on private property.

11

75.     In addition, the City's church-closure order gives government officials unbridled discretion with respect to enforcement of the order and the imposition of any penalty, making the order susceptible to both content- and viewpoint-based discrimination.

76.     Prohibiting or punishing Plaintiffs' religious speech does not serve any legitimate, rational, substantial, or compelling governmental interest.

77.     The City also has alternative, less restrictive means to achieve any interest that it might have.

78.     The City's church-closure order violates the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

79.     In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT III
### Violation of the First Amendment to the U.S. Constitution
### (Right to Assemble)

80.     Plaintiffs incorporate by reference paragraphs 1 through 79.

81.     The First Amendment prohibits the City from violating Plaintiffs right to peaceably assemble.

82.     The City's church-closure order violates Plaintiffs' right to peaceably assemble because the ban on "drive-in" services does not serve any legitimate, rational, substantial, or compelling governmental interest.

83.     In addition, the City has alternative, less restrictive means to achieve any interest that it might have.

84.     The City's church-closure order violates the right to assemble under the First Amendment to the United States Constitution, both facially and as applied.

85.     In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

12

## COUNT IV
### Violation of the Fourteenth Amendment
### (Procedural Due Process)

86.  Plaintiffs incorporate by reference paragraphs 1 through 86.

87.  The Due Process Clause prohibits the City from depriving Plaintiffs of life, liberty, or property without due process of law.

88.  The right to due process of law includes the right to be free from vague guidelines granting officials unbridled discretion.

89.  The City's church-closure order fails to provide due process because it does not identify what penalty or consequence, if any, can be or will be imposed for a violation.

90.  The City's church-closure order fails to provide due process because it was issued and enforced without any advance notice or warning.

91.  The City's church-closure order violates the Due Process Clause of the Fourteenth Amendment, both facially and as applied.

92.  In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT V
### Violation of Mississippi Religious Freedom Restoration Act

93.  Plaintiffs incorporate by reference paragraphs 1 through 92.

94.  Mississippi's Religious Freedom Restoration Act (MRFRA) prohibits the government from substantially burdening a person's exercise of religion unless it can demonstrate that "application of the burden to the person" is "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." Miss. Code. Ann. § 11-61-1(5).

95.  The City's church-closure order is subject to MRFRA because MRFRA applies to "all state laws, rules, regulations and any municipal or county

ordinances, rules or regulations and the implementation of those laws." *Id.* § 11-61-1(7).

96.    The City's church-closure order substantially burdens Plaintiffs' religion by prohibiting them from holding "drive-in" church services.

97.    The City's church-closure order does not further a compelling interest, nor is it narrowly tailored to advance any compelling governmental interest.

98.    The City's church-closure order therefore violates MRFRA as applied to Plaintiffs.

99.    In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT VI
### Violation of Executive Orders 1463 and 1466

100.    Plaintiffs incorporate by reference paragraphs 1 through 99.

101.    In response to the spread of COVID-19, Mississippi Governor Tate Reeves issued Executive Orders 1463 and 1466, which specify that "[r]eligious entities including religious and faith-based facilities, entities and groups, religious gatherings" qualify as "Essential Businesses and Operations" and thus may remain open and continue to hold services, including "drive-in" services like those held by Plaintiffs.

102.    The Governor's Executive Orders expressly preempts any local order, such as the City's church-closure order, that prohibits "Essential Businesses and Operations" from operating at the level necessary to provide essential services and functions.

103.    Further addressing his Executive Orders, the Governor stated that the government does not have the authority to shut down places of worship.

104.    The City's church-closure order is preempted by Executive Orders 1463 and 1466 and therefore null and void.

14

105. The City therefore acted ultra vires when issuing and enforcing the church-closure order.

106. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.    Enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the City of Greenville from enforcing its church-closure order, allowing Plaintiffs to continue holding "drive-in" services on Church property;

b.    Enter a judgment declaring that the City's church-closure order violates the U.S. Constitution's Free Exercise, Free Speech, Right to Assemble, and Due Process Clauses

c.    Enter a judgment declaring that the City's church-closure order violates the Mississippi Religious Freedom Restoration Act;

d.    Enter a judgment declaring the City's church-closure order null and void because it is preempted by the Governor's Executive Orders 1463 and 1466.

e.    Award Plaintiffs' damages, court costs, and reasonable attorney's fees; and

f.    Award such other and further relief as to which Plaintiffs may be entitled.

Respectfully submitted this 10th day of April 2020.

|                                                                                             |                                                                                                                                                                                                 |
|---------------------------------------------------------------------------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                                                                                             | s/Nathan W. Kellum                                                                                                                                                                               |
| Kristen K. Waggoner<br>AZ Bar No. 032382*<br>Ryan J. Tucker<br>AZ Bar No. 034382*<br>Jeremiah Galus<br>AZ Bar No. 030469*<br>**Alliance Defending Freedom**<br>15100 N. 90th Street<br>Scottsdale, AZ  85260<br>Telephone:  (480) 444-0020<br>kwaggoner@adflegal.org<br>rtucker@adflegal.org<br>jgalus@adflegal.org | Nathan W. Kellum<br>MS Bar No. 8813<br>Center for Religious Expression<br>699 Oakleaf Office Lane, Suite 107<br>Memphis, TN 38117<br>Telephone:  (901) 684-5485<br>nkellum@crelaw.org |

David A. Cortman
GA Bar No. 188810*
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

ATTORNEYS FOR PLAINTIFFS

*Motions for *Pro Hac Vice* admission forthcoming.

## VERIFICATION

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: April 10, 2020

Rev. Arthur Scott
Temple Baptist Church